IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Leonard J. Stevenson, | NO. C 00-21000 JW |
|     Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| Cherlyl Pliler, et al., | |
|     Respondents. | |

## I. INTRODUCTION

This matter is now before the Court for consideration of Leonard Stevenson's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254[1] concerning his 1997 conviction in the Alameda County Superior Court. For the reasons discussed below, the Petition is DENIED as to all claims.

## II. BACKGROUND

**A.  Facts**[2]

On December 11, 1996, Klaus Von Rottkay ("Von Rottkay") and Henry Hieslmair ("Hieslmair") were robbed by two armed men, later identified as Petitioner and Eric Johnson ("Johnson") in their Lawton Avenue duplex in Oakland, California. (Appeal at 2.) After the

---

[1] (Amended Petition for Writ of Habeas Corpus, hereafter, "Petition," Docket Item No. 7.)

[2] The facts are recounted from the opinion of the California Court of Appeal. (Answer to Petition for Writ of Habeas Corpus, Ex. 8, Court of Appeal Opinion, hereafter, "Appeal," Docket Item No. 48.)

intruders entered the duplex, they instructed Von Rottkay to turn out the lights and lead them to his bedroom. (Id.) One of them grabbed Von Rottkay by the shoulders and placed a black wool cap completely over his head. (Id.) He sat on the bed as instructed and told them where his money, car, and credit cards were when asked. During this time, Hieslmair was lying on his bed watching television. (Id. at 3.) A man, whom Hieslmair later identified in court as Johnson, entered his bedroom with a gun in his hand. (Id.) Hieslmair's glasses were pushed off, and he was blindfolded with a bandana and escorted to Von Rottkay's room. (Id.) Von Rottkay and Hieslmair were tied with their hands behind their backs. (Id.) The intruders demanded the PIN numbers for their ATM and credit cards, which the victims provided. One of the men asked Von Rottkay whether he was Jewish. (Id.) Hieslmair answered that Von Rottkay was Christian and one of the intruders replied that he used to be a Christian as well. (Id.) The intruders subsequently left, and the roommates called the police. (Id.)

In the early morning hours of December 14, a uniformed Oakland police officer in a marked patrol car spotted Von Rottkay's 1986 Oldsmobile, which had been reported stolen, at 30th and Chestnut Streets. (Appeal at 4.) The driver of the Oldsmobile, later identified in court as Petitioner, and his passenger, later identified as Johnson, saw the officer, abandoned the car and fled. (Id.) Other officers were called to the area, and a search was conducted. (Id.) Petitioner was found hiding in a boat; Johnson was spotted and ordered to stop, but he fled the police until he was apprehended. Both men were arrested. (Id.) The vehicle was searched, and a handgun was recovered from the passenger side floorboard. (Id.) At trial, Von Rottkay identified the handgun as one that the intruders used. (Id. at 5.)

Two days later, the police told Von Rottkay that someone had been caught in his stolen car and that two arrests had been made. (Appeal at 5.) He viewed a physical lineup, unaware that there would be a second lineup for the second suspect. (Id.) In the first lineup, Von Rottkay marked his lineup card twice with an X, indicating number three—Brandon Wellington ("Wellington"), according to police—and number four, who the police identified as Petitioner. (Id. at 8.) Von Rottkay was certain that number four was the second robber. (Id.) He thought that Wellington had

2

similar features to the first robber. (Id.) After he marked his lineup card, the officer conducting the lineup asked Von Rottkay if he was absolutely certain about both of his choices. (Id.) Von Rottkay explained that he was not equally certain—he thought number four was the second robber and he thought Wellington looked like the first robber, but he was not absolutely certain of the Wellington identification. (Id.) He then changed his X regarding Wellington to a question mark, but remained certain of his identification of number four. (Id.) When Von Rottkay viewed the second lineup, he recognized number one, Johnson, as the first robber, but marked his lineup card with a question mark. (Id.) He told police that he was not absolutely certain about this identification. (Id. at 5.) In his written statement, Von Rottkay stated that he was not certain that Johnson was one of the robbers. (Id. at 8–9.) Originally, Johnson had been in the number four position, but he switched to number one before the victims viewed the lineup. (Id. at 9.) Von Rottkay's written statement about the identifications was read to the jury at trial.

Hieslmair also attended the physical lineup. (Appeal at 5.) In the first lineup, he noted that Petitioner looked somewhat like one of the intruders, but in the end, he was not able to positively identify him. (Id.) Instead, Hieslmair chose Wellington in the first lineup. (Id. at 9.) He placed a question mark on the lineup card because he thought that Wellington looked similar to one of the robbers. (Id.) In his written statement, he wrote that he was unable to identify anyone in the first lineup. (Id.) In the second lineup, he selected number one, Johnson, again indicating his choice with a question mark. (Id.) He was not 100 percent certain that Johnson was the robber. (Id.) He was more certain of his identification of Johnson in the second lineup than he was of Wellington in the first lineup.[3] (Id.) Hieslmair's written statement taken at the time of the identifications was read aloud before the jury when the matter went to trial. (Id. at 5.)

On February 7, 1997, an information jointly charged Petitioner and Johnson with two counts of residential robbery (Cal. Penal Code § 211), one count of burglary (Cal. Penal Code § 212.5), and two counts of taking a vehicle (Cal. Penal Code § 459, Cal. Veh. Code § 10851). (See Appeal at 5.)

---

[3] At the December lineup, both Von Rottkay and Hieslmair identified Wellington as one of the intruders, although both victims later retracted these identifications.

3

1 Each count alleged that Petitioner and Johnson were armed and used a firearm during the
2 commission of the robbery and burglary (Cal. Penal Code §§ 12022(a)(1), 12022.5). (See id.)
3 Additionally, the information charged Petitioner with unlawful possession of a firearm by a felon
4 (Cal. Penal Code § 12021). (See id.) The information also alleged that Petitioner had a prior
5 robbery conviction (Cal. Penal Code §§ 667, 1170.12). (See id.)

6     On March 22, Petitioner conferred with his appointed counsel about his case. (Appeal at 26.)
7 She discussed with Petitioner an exchange that took place between Von Rottkay and one of the
8 perpetrators that she considered to be anti-Semetic. (Id.) Defense counsel told Petitioner—a
9 Muslim—that she was Jewish, but that she would represent him to the best of her ability. (Id.) On
10 March 24, 1997, Petitioner filed Marsden[4] and Faretta[5] motions. (Id.)[6] On March 31, the trial court
11 conducted a Marsden hearing to inquire into Petitioner's reasons for requesting that his counsel be
12 removed and substitute counsel appointed in her place. (Id.) Petitioner stated that his counsel, who
13 had told him that she was Jewish, seemed overly concerned with what appeared to her to be an anti-
14 Semitic comment that one of the perpetrators made to Von Rottkay. (Id.) He feared that she
15 assumed from his religious affiliation that he was anti-Semitic. (Id.) He argued that defense counsel
16 was religiously biased and prejudiced against him.[7] (Id.)

---

[4] People v. Marsden, 2 Cal. 3d 118, 122-26 (Cal. 1970) (requiring the trial court to permit a criminal defendant requesting substitution of counsel to specify the reasons for his request and generally to hold a hearing).

[5] Faretta v. California, 422 U.S. 806, 833-34 (1975) (holding that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so).

[6] The motions were prepared on March 18, four days prior to the March 22 meeting with defense counsel. (Id.)

[7] At the Marsden hearing, Petitioner also asserted that his counsel was acting as a prosecutor in the case by not challenging the lineup identification. (Answer to Petition for Writ of Habeas Corpus, Ex. 2, Reporter's Transcript on Appeal, hereafter, "RT," Volume 3, 9, February 20, 1997, Docket Item No. 41.) Petitioner also claimed that he was uncertain whether or not his counsel was prejudiced against him since she was the victim of a violent crime when she was 16 (she was 43 at the time she represented Petitioner) that was similar to a crime for which Petitioner was convicted in 1992. (Id. at 6.) Petitioner stated that he believed that his counsel was extremely competent and extremely intelligent, but that this was a case of malpractice. (Id. at 8.)

28     4

Defense counsel responded that she tried to convey to Petitioner that she bore no prejudice against him for religious reasons. (Id. at 26-27.) She explained that the comment recounted by Von Rottkay raised the specter of anti-Semitism, and she felt it necessary to inquire about the matter in order to know what the prosecution might uncover about Petitioner's background. (Id. at 27.) She further explained that she had informed Petitioner that she was Jewish, and they discussed the issue of prejudice. (Id.) Petitioner replied that his interpretation of their conversation was that she assumed that he was guilty and that he was uncomfortable having her defend him when she appeared to be prejudiced against him for religious reasons. (Id.) The trial court denied the Marsden motion, noting that in its thirteen years of experience with defense counsel, she had never displayed one iota of religious prejudice against anyone.[8] (Id.) On the following day, the trial court granted Petitioner's Faretta motion after Petitioner waived his right to counsel. (Id.)

At trial, Von Rottkay identified Johnson and Petitioner as the men who entered his apartment. (Appeal at 6.) He viewed an ATM machine photograph and identified Petitioner, who was wearing Von Rottkay's missing sailing jacket and using his missing ATM card. (Id.) He also identified the two defendants from photographs displayed in court. (Id.) Von Rottkay further testified about the identifications he made at the December physical lineups that he viewed. (Id.)

**B.    Case History**

On July 31, 1997, a jury found Petitioner and Johnson guilty of the crimes alleged in the information. (Petitioner's Traverse at 8, hereafter, "Traverse," Docket Item No. 51.) Petitioner's

---

Petitioner's counsel stated in relevant part at the hearing:

I do fully intend to bring that motion [challenging the identification] if I should go to trial with Mr. Stevenson. It is just that I think we have a different opinion as to the probable success of the motion. And I just want my client to be aware of the fact that the outcome of that motion may not be what he expects it to be. (RT, Volume 3, 10, February 20, 1997.)

[8] The trial judge also stated at the Marsden hearing:

Further, I have seen [defense counsel] practice since she was the victim of a crime and more than adequately represent people with crimes as bad or worse than she was the victim of. (RT, Volume 3, 11-12, February 20, 1997.)

motion for new trial was denied. (Appeal at 8.) On September 26, 1997, the trial court sentenced Petitioner to twenty-seven years in state prison—an upper term of twelve years for robbery with a ten-year enhancement for using a firearm and a five-year enhancement for his prior conviction. (Appeal at 8; Traverse at 8.) Petitioner was also sentenced to a concurrent term of eight years for the second robbery enhanced by an eight-year term for firearm use. (Appeal at 8.) Terms for the remaining convictions and enhancements were stayed or stricken. (Id.)

On July 23, 1999, the California Court of Appeal affirmed Petitioner's conviction. (Answer to Petition for Writ of Habeas Corpus at 2, hereafter, "Answer," Docket Item No. 36.) On October 27, 1999, the California Supreme Court denied review of Petitioner's case. (Id.) On May 1, 2000, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, and the petition was denied on August 9, 2000. (Id.)

On September, 27, 2000, Petitioner filed a petition for writ of habeas corpus in federal court. (Docket Item No. 1.) On June 13, 2001, Petitioner filed an Amended Petition for Writ of Habeas Corpus. (Docket Item No. 7.) On August 27, 2002, the Court issued an order directing Respondents to show cause why the Amended Petition should not be granted, and dismissed claims one through four of the Amended Petition.[9] (Order to Show Cause at 4, hereafter, "First OSC," Docket Item No. 10.) On September 23, 2002, Petitioner filed a copy of his Petition for Review to the California Supreme Court and indicated that claims one, three, and four of his amended petition were actually raised in the petition for review, which was summarily denied by the California Supreme Court. (See Docket Item No. 11.)

On October 14, 2003, the Court issued an order vacating its order of dismissal regarding claims one through four in the petition entered August 27, 2002. (See Docket Item No. 19.) On May 12, 2004, the Court reexamined Petitioner's earlier filings in this action and determined that only claim four was unexhausted. (See Docket Item No. 21.) On May 27, 2004, Petitioner dismissed claim four. (See Election by Petitioner at 1, Docket Item No. 22.)

---

[9] Claims one, three, and four were dismissed due to lack of exhaustion of the claims in state court, and claim two was dismissed for failure to raise a federal claim. (First OSC at 4.)

6

On March 30, 2006, the Court found that dismissal of claim two was erroneously vacated by the October 14 order and denied the claim. (Second Order to Show Cause at 3 n.2, hereafter, "Second OSC," Docket Item No. 25.) The Court found the remaining claims, liberally construed, stated a cognizable claim under § 2254, and issued a second order, directing Respondents to show cause why a writ of habeas corpus should not be granted. (Second OSC at 4.) On July 18, 2006, Respondents filed an Answer. (See Docket Item No. 36.) On November 29, 2006, Petitioner filed a Traverse. (See Docket Item No. 51.)

### III. STANDARDS

Petitioner filed his Petition for Writ of Habeas Corpus in this Court on September 27, 2000. Accordingly, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes a "new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." Williams v. Taylor, 529 U.S. 362, 412 (2000).

Under the AEDPA, a district court may entertain a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." Williams, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. 63, 71 (2003); see Alvarado v. Hill, 252 F.3d 1066, 1068-69 (9th Cir. 2001). Section 2254(1) "restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Williams, 529 U.S. at 412.

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, at 412-13. "Under the 'reasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, at 411. The objectively unreasonable standard is not a clear error standard. See Andrade, 538 U.S. at 75 (rejecting the Ninth Circuit's use of clear error standard in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)). Conflating the "objectively unreasonable" standard with the "clear error" standard "fails to give proper deference to state courts." Id. After Andrade, "[t]he writ may not issue simply because, in [the federal habeas court's] determination, a [s]tate court's application of federal law was erroneous, clearly or otherwise." Id. at 75-76.

A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to the petitioner's claim, that was properly presented and made part of the state-court record. See Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. See Sumner v. Mata, 449 U.S. 539, 546-47 (1981); Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir. 2001), amended by 253 F.3d 1150 (9th Cir. 2001).

Finally, habeas relief is warranted only if the constitutional error at issue is a structural error or had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)). Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual" prejudice. Brecht, 507 U.S. at 637.

Where, as in this writ, the California Supreme Court denies review of Petitioner's claim without explanation, the Court looks to the last reasoned state court decision in conducting habeas review. See Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citation omitted) (the district court "looks through" the unexplained California Supreme Court decision to the last reasoned state court decision), cert. denied, 534 U.S. 944 (2001). The California Court of Appeal rendered the last reasoned state court decision in Petitioner's case.

## IV. DISCUSSION

Petitioner alleges the following claims for federal habeas corpus relief: (1) the trial court violated his Sixth Amendment right to present a defense when it failed to allow witness Wellington to testify; (2) his Fourteenth Amendment right to have an attorney present at the pre-charge lineup was violated; (3) the trial court erroneously denied his motion to substitute counsel, in violation of the Sixth Amendment right; and thus, (4) his waiver of counsel was involuntary. (Petition at 10–11.) The Court considers each claim in turn.

### A. Trial Court's Refusal to Allow Wellington to Testify or Appear[10]

#### 1. Wellington's In-Court Showup

Petitioner contends that the trial court violated his Sixth Amendment right to present a defense when it refused to allow Wellington to appear in court. (Traverse at 19.) Petitioner contends that Wellington's testimony would have allowed Petitioner to show the jury the difference in physical appearance between Johnson and Wellington, which may not have been clear through the

---

[10] Respondents point out that the Amended Petition included "testify or appear," whereas the Second Order to Show Cause only stated "testify." The Court will address both issues.

9

available photographs of the lineup,[11] and would have undermined the victims' identification of Johnson as one of the robbers. (Id. at 21.)

The Sixth Amendment affords an accused in a criminal trial the right to present a defense. Washington v. Texas, 388 U.S. 14, 18 (1967). Sixth Amendment limitations on the exclusion of critical corroborative defense evidence are clearly established federal law under AEDPA. See Chia v. Cambra, 360 F.3d 997, 1003 (9th Cir. 2004); DePetris v. Kuykendall, 239 F.3d 1057, 1062 (9th Cir. 2001). In exercising his right to present a defense, the accused must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. Chambers v. Mississippi, 410 U.S. 284, 302 (1973).

The Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate the Sixth Amendment right to present a defense, as well as the due process right to a fair trial. DePetris, 239 F.3d at 1062 (citing Chambers, 410 U.S. at 294; Washington, 388 U.S. at 18-19). However, "[s]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quotations and citations omitted). Thus, "[w]hile the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Id. at 326.

In deciding whether the exclusion of evidence violates the right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. Chia, 360 F.3d at 1004 (citing Miller v. Stagner, 757 F.2d 988, 994 (9th

---

[11] Johnson brought this claim in the California Court of Appeal, contending that the exclusion of this evidence would have undermined the victims' identification of Johnson as one of the robbers. Petitioner joined in this claim of error. (Appeal at 8.)

10

Cir. 1985)). The court should also look to the state interests underlying the state evidentiary rules on which the exclusion was based. See id. at 1006.

The Miller balancing test, however, is a creation of circuit law and, consequently, is not "clearly established law" for purposes of habeas corpus review under 28 U.S.C. § 2254(d)(1). See Moses v. Payne, 555 F.3d 742, 760 (9th Cir. 2009). Thus, as a matter of law, a state court's failure to apply the Miller balancing test is not contrary to or an unreasonable application of clearly established Supreme Court precedent. See id. at 759.

Thus, in the absence of a more specific test under Supreme Court precedent, to obtain habeas relief on the basis of an evidentiary error, a petitioner must show that the evidentiary rule applied by the state court "serve[d] no legitimate purpose or [was] disproportionate to the ends that [it was] asserted to promote," Holmes, 547 U.S. at 326, and that the error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 623.

With respect to this issue, the California Court of Appeal found as follows:

> The jury had a photograph of the lineups showing both Johnson and Wellington as they appeared in December when the lineups were conducted. The proposed in-court showup would have been cumulative of this evidence. To conduct a showup seven months after the lineups were conducted under conditions that may have been different from those used at the lineups would also have been time-consuming and potentially confusing to the jury.
>
> Johnson cross-examined Von Rottkay and Hieslmair about their lineup identifications, and explored whether the lineup cards, lineup statements, and opportunity to observe the perpetrators during the crime undermined their in-court identification of Johnson. We are satisfied that the cumulative evidence of an in-court showup between Johnson and Wellington would not have resulted in a significantly different impression of the jury's view of the victims' credibility.
>
> As the trial court did not err in excluding this evidence[12] that Johnson urges would have been directly relevant to his guilt or innocence, a fortiori, it did not err against Stevenson who could only have been indirectly affected by the exclusion of the proffered evidence of Wellington's person.

(Appeal at 11.)

---

[12] The trial court applied California Rule of Evidence 352, which states the "court may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Cal. Evid. Code 352. The trial court held that this procedure would confuse the issues and result in undue consumption of time, and that the probative value was substantially outweighed by those factors. (RT, Volume 6, 855, July 17, 1997.)

11

The Court finds that Petitioner has not met his burden to show that the state court applied an evidentiary rule that "serve[d] no legitimate purpose or [was] disproportionate to the ends that [it was] asserted to promote." Indeed, the Court finds the Court of Appeal's reasoning sound. The in-court showup would have been cumulative and an undue consumption of time, as the jury had access to photographs of the lineup. (See Appeal at 11.) Also, Johnson cross-examined both victims on their identifications and explored pertinent issues related to their credibility. (See id.) In light of these facts, California Court of Appeal was not unreasonable to conclude that bringing in Wellington seven months later under different conditions could cause undue prejudice and mislead the jury.

The California Court of Appeal's finding is also consistent with the test set forth in Miller. Wellington's presence had minimal probative value and was merely cumulative. Furthermore, it was not a major part of the attempted defense, as Johnson, who was more directly affected by the excluded evidence, was able to argue in his closing argument the differences between himself and Wellington in the photographs of the lineups to which the jury had access. (RT, Volume 9, 1778-79, July 30, 1997, Docket Item No. 47.) Thus, the Court finds that the Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

Accordingly, Petitioner's Sixth Amendment right to present a defense was not violated by the trial court's refusal to allow an in-court showup of Wellington. Petitioner is not entitled to habeas relief on this claim.

**2.     Wellington's Testimony**

Petitioner contends that excluding the testimony of Wellington violated Petitioner's Sixth Amendment right to compulsory process. (Traverse at 22.) Petitioner asserts that the proffered evidence was relevant because Wellington could testify about how the two men switched positions and how the lineup was unnecessarily suggestive. (Id. at 24.)[13]

---

[13] At trial, Petitioner's theory was that the officer conducting the lineup somehow suggested to Von Rottkay who the suspect was, and that Von Rottkay's selection of Wellington, who was standing in what was once Petitioner's place in the lineup, constituted evidence that the victim was influenced by the officer's suggestion. (Appeal at 11.)

12

The Sixth Amendment preserves the right of a defendant in a criminal trial to have compulsory process for obtaining a favorable witness. U.S. Const. amend. VI. This right was held applicable to the states through the Fourteenth Amendment:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law.

Washington, 388 U.S. at 19. The Ninth Circuit has summarized the rule as "states may not impede a defendant's right to put on a defense by imposing mechanistic . . . or arbitrary . . . rules of evidence." LaGrand v. Stewart, 133 F.3d 1253, 1266 (9th Cir. 1998). The rule is clearly established federal law under 28 U.S.C. § 2254(d) and a proper basis for federal habeas relief. See Chambers, 410 U.S. at 302; Washington, 388 U.S. at 19.

The right to compulsory process, however, is not absolute. See Taylor v. Illinois, 484 U.S. 400, 410 (1988); Rock v. Arkansas, 483 U.S. 44, 55 (1987). For example, the Compulsory Process Clause applies only to testimony that is both material and favorable to the defense. United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 873 (1982). The accused's compulsory process rights also may be limited by evidentiary rules and by the state's legitimate interest in efficient trials. See Perry v. Rushen, 713 F.2d 1447, 1450-53 (9th Cir. 1983), cert. denied, 469 U.S. 838 (1984).

Here, the California Court of Appeal found in relevant part:

> The trial court denied the motion because the jury had already heard evidence from the police that Petitioner had changed places with another filler during the lineup. The photo lineup showed the placement of Wellington and Petitioner as they were at the time of the lineup. The victims were not aware of the switch in places. It ruled that to call Wellington to testify about the proffered testimony would not be probative; would be cumulative, time-consuming and confusing; and thus, would be more prejudicial than probative. See Cal. Evid. Code § 352.
>
> Because the uncontradicted evidence established that Stevenson and Wellington switched positions in the lineup, testimony by Wellington that he switched positions with Stevenson would have been clearly cumulative. In short, the jury heard that Stevenson and Wellington changed places and this fact was undisputed.

(Appeal at 12.)

13

Upon review, the Court finds that the Court of Appeal's determination was not contrary to or an unreasonable application of clearly established federal law. The Court of Appeal cited uncontradicted testimony that Petitioner and Wellington switched positions before the victims saw them in the lineup, and appropriately concluded that Wellington's testimony on this same issue would have been more prejudicial than probative.

Accordingly, Petitioner's Sixth Amendment right to compulsory process was not violated by the trial court's denial of Petitioner's request to call Wellington to testify. Petitioner is not entitled to habeas relief on this claim.

### B. <u>Right to Have an Attorney Present at Precharge Lineup</u>

Petitioner contends that his Fourteenth Amendment right to counsel at the December 16 pre-charge lineup was violated, thus preventing him from presenting a defense. (Traverse at 25.)[14]

The right to counsel exists to protect the accused during trial-type confrontations with the prosecutor. See United States v. Gouveia, 467 U.S. 180, 188 (1984). A person's Sixth Amendment and Fourteenth Amendment right to counsel attaches "only at or after the time that adversary judicial proceedings have been initiated against him." Kirby v. Illinois, 406 U.S. 682, 688 (1972); see also Gouveia, 467 U.S. at 190. Adversary judicial proceedings are initiated by way of formal charge, preliminary hearing, indictment, information, or arraignment. See Kirby, 406 U.S. at 688-89; Brewer v. Williams, 430 U.S. 387, 398 (1977). Consistent with this view, the Supreme Court has held that a pretrial lineup conducted *after a suspect has been indicted* is a critical stage in a criminal prosecution at which the Sixth Amendment entitles the accused to the presence of counsel. United States v. Wade, 388 U.S. 218, 236-37 (1967). In Kirby, on the other hand, the Supreme Court declined to extend the right to counsel to *pre-indictment* lineups, and explained that a defendant in those circumstances is sufficiently protected by the Due Process Clause of the Fifth and Fourteenth

---

[14] The Court's First Order to Show Cause rejected Petitioner's original second claim. (Amended Petition at 10; See First OSC at 5.) Despite the dismissal of that claim, Petitioner's Traverse asserted numerous arguments pertaining to Petitioner's rejected second claim concerning the admissibility of evidence of the lineup to the jury. Accordingly, the Court will not address those arguments and limits its inquiry to the issue of Petitioner's right to counsel at the pre-charge lineup.

Amendments, which forbids admission of a pre-trial lineup identification that is unnecessarily suggestive and conducive to irreparable mistaken identification. Kirby, 406 U.S. at 690-91.

In this case, on December 16, 1996, the police conducted the lineups, without counsel present for Petitioner. (Answer at 5.) The information charging Petitioner was filed February 7, 1997. (Id. at 2.) Since the lineup was conducted before any adversary judicial proceeding was initiated, Petitioner's right to counsel did not attach at the pre-charge lineups. Thus, the California Court of Appeal's rejection of Petitioner's claim on this basis was not contrary to, or an unreasonable application of, clearly established federal law.[15]

Accordingly, Petitioner has failed to establish that he is entitled to habeas relief on the basis of lack of counsel at the pre-charge lineups. Petitioner is not entitled to habeas relief on this claim.

## C. Trial Court's Denial of Petitioner's Motion to Substitute Counsel

Petitioner contends that the trial court violated his Sixth Amendment right to counsel when it erroneously denied Petitioner's Marsden motion to substitute counsel. (Traverse at 15.) Petitioner contends that he had a significant conflict with his counsel such that the trust required to build an attorney-client relationship was not possible, and that the state court failed to sufficiently inquire into the relationship to determine whether Petitioner's counsel held a religious bias against Petitioner. (Id. at 16.) In particular, Petitioner offered the following facts to support his contention:

(1) Defense counsel failed to file motions challenging the pre-charge lineup despite Petitioner's insistence that she do so. (Id. at 17.)
(2) After defense counsel discussed with Petitioner that she believed that an anti-Semitic comment was made by one of the perpetrators to Van Rottkay during the robbery, she informed Petitioner that she was Jewish, but would nevertheless defend him to her best ability. (Id.)
(3) The state court failed to consider the significance of the fact that defense counsel had been a victim of a crime that was similar to a crime that Petitioner had committed in the past. (Id. at 16.)

---

[15] Petitioner also contended before the Court of Appeal that Kirby did not intend to preclude the possibility of a violation of the right to due process under the Fourteenth Amendment under these facts regarding the pretrial lineup. (Appeal at 25.) The Court of Appeal assumed that Petitioner's interpretation of Kirby was correct, but nevertheless found that the facts did not implicate fundamental fairness such that Petitioner's due process right was violated. (Id. (citing Moran v. Burbine, 475 U.S. 412, 433-34 (1986)). The Court finds that the Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly established federal law.

15

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend VI. A criminal defendant who cannot afford to retain counsel has no right to counsel of his own choosing. See Wheat v. United States, 486 U.S. 153, 159 (1988). In short, the Sixth Amendment does not guarantee a "meaningful relationship" between an accused and his counsel, rather, it only guarantees effective representation of counsel. See Morris v. Slappy, 461 U.S. 1, 14 (1983).

The denial of an indigent criminal defendant's motion for substitution of counsel may nevertheless violate his Sixth Amendment right to counsel. See Daniels v. Woodford, 428 F.3d 1181, 1197-98 (9th Cir. 2005).[16] To compel a criminal defendant to undergo a trial with the assistance of an attorney with whom the defendant has an "irreconcilable conflict" is to deprive the defendant of any counsel whatsoever. Id. at 1197. The Ninth Circuit has held that when a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. Id. at 1475-76. However, the inquiry need only be as comprehensive as the circumstances reasonably would permit. King v. Rowland, 977 F.2d 1354, 1357 (9th Cir. 1992). Disagreements over strategic or tactical decisions are not an irreconcilable conflict because they do not rise to a level of a "complete breakdown in communication." Stenson v. Lambert, 504 F.3d 873, 886 (9th Cir. 2007) (citing Schell, 218 F.3d at 1026).

Regardless of whether the state court failed to rule on the motion to substitute counsel or denied the motion, the ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated. See Schell, 218 F.3d at 1024-25. That is, the habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [the petitioner's] constitutional rights in that the conflict between [the petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant

---

[16] Since the denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel, it is properly considered in a federal habeas proceeding. Bland v. Cal. Dep't of Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000) (*en banc*).

16

impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Id. at 1026.[17]

Generally, the denial of, or failure to rule on, a motion to substitute counsel should be analyzed as a non-structural constitutional error. Schell, 218 F.3d at 1027. However, "denial of the qualified right to counsel of choice is reversible error regardless of whether prejudice is shown." Crandell v. Bunnell, 144 F.3d 1213, 1216 (9th Cir. 1998), overruled on other grounds by Schell, 218 F.3d 1017 (citing United States v. Ray, 731 F.2d 1361, 1365-66 (9th Cir. 1984)). A waiver of the right to counsel following an improper denial of a motion to substitute incompetent counsel does not cure the Sixth Amendment violation. A criminal defendant may not be forced to choose between incompetent counsel and no counsel at all. Crandell, 144 F.3d at 1215-16.

Here, the California Court of Appeal found in relevant part:

> The trial court did not abuse its discretion by denying the Marsden motion.[18] Nothing in Stevenson's or defense counsel's recounting of the events of March 18 raises the specter of religious bias. Rather, it suggests that competent defense counsel, seeing a potential for the prosecution to argue religious prejudice against her client at trial, sought to inquire about this matter from her client in order to learn best how to counter such a prosecution strategy, should it arise.
>
> A trial court need not conclude that an irreconcilable conflict exists if the defendant has not made a sustained good faith effort to work with counsel and has not given counsel a fair opportunity to demonstrate his or her trustworthiness. As Stevenson rejected defense counsel's assistance only a few weeks after her appointment and only two days after their March 22 conversation, the trial court could reasonably conclude that he had given defense counsel insufficient time to demonstrate that she was worthy of her client's trust. The trial court did not abuse its discretion in concluding that Stevenson did not establish an irreconcilable conflict.

(Appeal at 28.)

---

[17] In determining whether the trial judge should have granted a substitution motion, the reviewing habeas court must consider the extent of the conflict, whether the trial judge made an appropriate inquiry into the extent of the conflict, and the timeliness of the motion to substitute counsel. Daniels, 428 F.3d at 1197-98.

[18] At the Marsden hearing, in response to Petitioner's claims of failing to file a motion to suppress the pre-charge lineup, defense counsel stated that she had a motion ready to file and had informed Petitioner that the outcome of the motion "may not be what he expects it to be." (RT, Volume 3, 10, February 20, 1997.) With respect to prejudice and bias, the court stated that in its years of experience with defense counsel she had not once displayed any religious prejudice. (RT, Volume 3, 11, February 20, 1997.) The trial court also stated that it had seen defense counsel represent many clients who had committed crimes as bad or worse than the one that had once been committed against her. (Id. at 12.)

17

As a threshold matter, Petitioner has failed to present any evidence to rebut the presumption that the state court's findings of fact were correct.[19] Regarding the motion to challenge the pre-charge lineup, Petitioner's counsel was willing to file the motion, but she and her client apparently disagreed over the timing of filing the motion and as well as the expected outcome of the motion. (See RT, Volume 3, 10, February 20, 1997.)[20] Petitioner has at most shown a tactical disagreement with his counsel as to filing the motion—not an irreconcilable conflict. Thus, the Court finds no constitutional error in the state court's decision as to this issue.[21]

First, with respect to any religious bias on the part of defense counsel, Petitioner has failed to demonstrate that the Court of Appeal's determinations were contrary to, or an unreasonable application of, clearly established federal law. As the Court of Appeal noted, defense counsel's inquiry into the anti-Semitic remark suggests a competent defense strategy to prepare against arguments by the prosecution. (See Appeal at 10.) Petitioner has not rebutted this finding. Thus, the Court finds no constitutional error in the state court's determination. Second, with respect to the fact that defense counsel was a victim of a crime similar to a crime previously committed by Petitioner, the crime of which counsel was a victim occurred over twenty-five years prior to Petitioner's case. The Court is satisfied that the Court of Appeal conducted an adequate review of the trial court record, and appropriately determined that the similar nature of the crimes would not prejudice counsel against Petitioner. The Court finds no constitutional error in the state court's determination. Thus, as to the trial court's denial of Petitioner's motion to substitute counsel, the

---

[19] AEDPA requires the reviewing court to presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

[20] A motion challenging the pre-charge lineup was later brought by both Petitioner and Johnson's counsel and was denied. (RT, Volume 4, 254, July 14, 1997, Docket Item No. 42.)

[21] Petitioner also contends that defense counsel encouraged him to accept the plea offer by misrepresenting the charges against him. (Traverse at 17.) Aside from this single statement in the Traverse, there is nothing in the record indicating such an act. Accordingly, the Court finds that Petitioner has not met his burden of rebutting the state court's factual findings by clear and convincing evidence.

18

Court finds that the Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly established federal law, and did not involve an unreasonable determination of facts.

Accordingly, Petitioner is not entitled to habeas relief regarding the trial court's decision to deny the <u>Marsden</u> motion.[22]  Petitioner is not entitled to habeas relief on this claim.

## V. CONCLUSION

The Court DENIES the Petition for Writ of Habeas Corpus as to all claims.  Judgment shall be entered accordingly.

Dated: January 4, 2010

JAMES WARE
United States District Judge

---

[22] Petitioner's only remaining claim for habeas relief is for involuntary waiver of his Sixth Amendment right to counsel, which Petitioner contends was induced by the erroneous denial of his request for substitution of counsel. (Amended Petition at 10.) Since the Court finds that there was no error in the denial of his <u>Marsden</u> motion to substitute counsel, Petitioner's claim that he involuntarily waived his right to counsel fails. (<u>See</u> Appeal at 28.)

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Johanna Danielle Hoffmann, johannahoffmann@sbcglobal.net
Peggy S. Ruffra, peggy.ruffra@doj.ca.gov
Ronald B. Bass, basslaw2000@yahoo.com
Seth K. Schalit, seth.schalit@doj.ca.gov

**Dated: January 4, 2010**          **Richard W. Wieking, Clerk**
                                    **By:    /s/ JW Chambers**
                                    **Elizabeth Garcia**
                                    **Courtroom Deputy**